IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16CR221-MOC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MONEY JUDGMENT AND** |
| | ) | **PRELIMINARY ORDER OF** |
| v. | ) | **FORFEITURE** |
| | ) | |
| | ) | |
| (1) ROBERT LESLIE STENCIL | ) | |

**THIS MATTER** is before the Court on the Government's Motion, [#384] pursuant to FED. R. CRIM. P. 32.2(b) and 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(a)(8), requesting that the Court enter:

(1) a $463,221 forfeiture Money Judgment against Defendant; and

(2) a Preliminary Order of Forfeiture for:

- Approximately $304,881.82 seized from J.P. Morgan Chase Account XXXXX9352, such account held in the name of Niyato Industries, Inc. and with a signature card in the name of Robert L. Stencil;

- Approximately $214.76 seized from J.P. Morgan Chase Account XXXXX6166, such account held in the name of Niyato Industries, Inc. and with a signature card in the name of Robert L. Stencil;

- Approximately $100,000 seized from an account under the control of attorney Randy M. Fletcher of the Law Firm Manning Fulton, to which Niyato Industries had forwarded fraud proceeds as acknowledged during trial by Fletcher;

- One 2012 Ford LGT conventional F-150, VIN 1FTNF1CFXCKD28495, titled to Niyato Industries, Inc.;

- One 2015 Ford F-350, VIN 1FT8W3B63FEB06250, titled to Niyato Industries, Inc.; and

- Any and all interest in Niyato Industries, Inc.

1

(collectively, "the Properties").  Based on the preponderance of the evidence as set forth in the trial record, sentencing record, the Motion, and the documents affixed to the Motion, this Court hereby **GRANTS** the Motion.  The Court **FINDS AS FOLLOWS**:

## I. BACKGROUND

In October 2017, a Grand Jury returned a Second Superseding Bill of Indictment (Doc. 151; hereafter, "Indictment") against Defendant Stencil and others, charging them with the following offenses:

- Mail and Wire fraud conspiracy in violation of 18 U.S.C. § 1349 as set forth in Count One;
- Substantive mail fraud in violation of 18 U.S.C. § 1341 as set forth in Counts Two through Fifteen;
- Substantive wire fraud in violation of 18 U.S.C. § 1343 as set forth in Counts Sixteen through Twenty-Nine; and
- Money laundering in violation of 18 U.S.C. § 1957(a), as set forth in Counts Thirty through Thirty-Four.

The Indictment alleged multi-million dollar criminal conduct spanning from in or about January 2012 through in or about August 2016. The Indictment also contained a Grand Jury finding of probable cause for forfeiture of a money judgment in the amount of at least $2,597,910 and forfeiture of, among other items, the Properties.

Co-conspirators Nicholas Fleming, Martin Lewis, Paula Saccomano, Kristian Sierp, and Dennis Swerdlen pled guilty. As set forth in their Factual Bases (Docs. 35, 133, 135, 143, and 295) to their pleas, these co-conspirators stipulated that the conspirators fraudulently convinced victims to invest in Niyato stock and falsely represented that Niyato was a legitimate operation. The co-conspirators stipulated that they caused victims to mail payments for Niyato stock to Stencil at a private mail box or to wire payments directly to a Niyato J.P. Morgan Chase bank

account, which Stencil and the co-conspirators used for their personal benefit. Defendant Stencil and his wife, Ludmilla Stencil[1], requested a trial.

From January 8, 2019, through January 29, 2019, this Court conducted a trial. At trial, the Government introduced voluminous exhibits (Doc. 321) and numerous prosecution witnesses (Doc. 322) testified. Witnesses included crime victims, co-conspirators Saccomanno, Sierp, Swerdlen, Fleming, and Lewis, and United States Postal Inspection Service contract Investigative Support Analyst and CPA, Christopher R. Green. CPA Green testified as an expert witness about, among other issues, the receipt and use of victim funds and how the money obtained from victims was split fifty-fifty between the Defendant Stencil and Duke. CPA Green also testified that financial analysis revealed that Stencil kept most of the money for himself and did not use the money for a legitimate business operation. CPA Green's findings are reflected in Trial Exhibit 67, Motion Exhibit 1, about which he testified at trial.

On January 30, 2019, the Jury returned verdicts of guilt (Doc. 338) on all counts against Defendant Stencil. Since Defendant did not request a jury determination on forfeiture, the Court now resolves forfeiture based on the record in the case and the information set forth in the Government's Motion and exhibits.

## II. LEGAL CONCLUSIONS

A. **Overview of the law authorizing forfeiture**

1. **Proceeds**

Any person who is convicted of violating the conspiracy and fraud statutes at issue in this case shall forfeit to the United States any property which constitutes or is derived from gross proceeds traceable to such violation. 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(8); 28 U.S.C. §

---

[1] The Jury acquitted (Doc. 338) Mrs. Stencil.

2461(c). Courts use a nexus test to determine whether assets constitute or are derived from proceeds. United States v. Farkas, 474 Fed. Appx. 349, 359 (4th Cir. 2012) (citing Libretti v. United States, 516 U.S. 29 (1995) and United States v. Cherry, 330 F.3d 658, 669-70 (4th Cir. 2003)). Courts use the "but for" test to determine whether there is a nexus between a crime and properties that the Government contends are proceeds. Id. at 359-60. "Pursuant to this test, [assets] are considered proceeds and therefore deemed forfeitable if 'a person would not have [the assets] but for the criminal offense.'" Id. (summarizing Seventh Circuit, D.C. Circuit, Second Circuit, and Eastern District of Virginia case-law and quoting the Western District of New York). "Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds." United States v. Guess, 2015 WL 1208882, at *2 (W.D.N.C. March 17, 2015) (citing published and unpublished cases on the topic from the Sixth Circuit and the District of Maryland).

### 2. Facilitating Property

Further, in instances of fraud involving telemarketing, like the fraud in this case, a defendant must also forfeit property used or intended to be used to commit, to facilitate, or to promote the commission of the offense. 18 U.S.C. § 982(a)(8)(B). Courts use a "substantial connection" test to determine whether property that facilitates or is intended to be used to facilitate crime is subject to forfeiture. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010). "Substantial connection may be established by showing that use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance.'" Id. (citing United States v. Schifferli, 895 F.2d 987 (4th Cir. 1990) and United States v. Santoro, 866 F.2d 1538 (4th Cir. 1989)).

### 3. Property Involved In Money Laundering

In addition, any person convicted of violating the money laundering laws shall forfeit any property, real or personal, involved in such offense, or any property traceable to such property. 18 U.S.C. § 982(a)(1). Property "involved in" money laundering includes both the criminally derived proceeds and the legitimately obtained property commingled with the criminally derived proceeds in a money laundering transaction. See United States v. Kivanc, 714 F.3d 782, 794-95 (4th Cir. 2013) (civil forfeiture case involving concealment and transactional money laundering forfeiture under 18 U.S.C. § 981(a)(1)(A)). Property "involved in" money laundering may even include a business entity that facilitates a money laundering offense. See In re 650 Fifth Ave. and Related Properties, 777 F. Supp. 2d 529, 566-67 (S.D.N.Y. 2011) (collecting cases on forfeiture of business entities in the contexts of concealment and promotion).

### 4. Money Judgment

In addition, a money judgment equivalent to proceeds is authorized under FED. R. CRIM. P. 32.2(b)(1)(A). Further, substitute property of Defendant is subject to forfeiture under 21 U.S.C. § 853(p)(2) when, *inter alia*, property subject to forfeiture cannot be located or one of the other criteria in Section 853(p)(1) is met. The interplay of the Rule 32.2 money judgment provision with the substitute property law and proceeds law applicable in this case is set forth more fully below.

### 5. Preponderance Burden of Proof

The Government's burden of proof on forfeiture is preponderance of the evidence. United States v. Cherry, 330 F.3d 658, 669 (4th Cir. 2003); United States v. Tanner, 61 F.3d 231, 233 (4th Cir. 1995). The Court's "determination may be based on evidence already in the record, including [ . . . ] any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." FED. R. CRIM. P. 32.2(b)(1)(B); see also United

5

States v. Farkas, 474 Fed. Appx. 349, 360 (4th Cir. 2013) (court may rely on trial record to determine forfeiture). The Government may satisfy the preponderance burden by both direct and circumstantial evidence. United States v. St. Pierre, 484 F.3d 75, 86 (1st Cir. 2007).

**B.      The record supports forfeiture of the $463,221 Money Judgment.**

FED. R. CRIM. P. 32.2 and 21 U.S.C. § 853 support imposition of a forfeiture money judgment when directly forfeitable assets have been rendered unavailable. FED. R. CRIM. P. 32.2; see also 21 U.S.C. § 853; United States v. Chamberlain, 868 F.3d 290, 296 (4th Cir. 2017) (in opinion disallowing pretrial restraint of substitute assets, discussing issuance of money judgments in Fourth Circuit) (citing United States v. McHan, 345 F.3d 262, 272 (4th Cir. 2003)).

Rule 32.2 provides in pertinent part as follows: "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." FED. R. CRIM. P. 32.2(b)(1)(A); see also United States v. Butler, 578 Fed. Appx. 178, 182 (4th Cir. 2014) (district court must find nexus between forfeiture calculation and crime).

Further, the substitute property provisions of 21 U.S.C. § 853(p) provide additional support for imposition of a forfeiture money judgment. The substitute property provisions provide for forfeiture of property of a defendant up to the value of otherwise forfeitable property that cannot be found. 21 U.S.C. § 853(p); see also Chamberlain, 868 F.3d at 293-94. The substitute property provisions apply if, as a result of any act or omission of defendant, the otherwise forfeitable property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. 21 U.S.C. § 853(p)(1)-(2). Here, as set

6

forth above, proceeds of the fraud and conspiracy counts of conviction are subject to forfeiture and, as set forth below, the Government has limited its money judgment request to an amount equivalent to the proceeds that cannot be found and were sent directly to Defendant.

Specifically, in this case, the Government has limited its request to a conservative calculation of a Money Judgment equivalent to only $463,221, the amount of fraud proceeds transferred from Niyato to Defendant Stencil and/or an entity that he controlled, purportedly for "Personal Benefit"—benefit that cannot be recouped in tangible asset form. In other words, the Government has not requested that this Court hold Defendant Stencil liable in forfeiture for the entire $2,745,329 million in fraud proceeds that Niyato obtained while under Stencil's direction, even though a large amount of this over $2.7 million likely was used for Stencil's personal benefit. The calculations that support these amounts are set forth more fully in Schedule 4 of Trial Exhibit 67, Motion Exhibit 1 about which CPA Green testified.

Under such circumstances, based on the record, and based on 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(8), the substitute property provisions of 21 U.S.C. § 853(p), and Rule 32.2(b)(1)(A), this Court finds that the preponderance of evidence supports entry of a money judgment for the fraud proceeds attributable to Defendant, which the Court finds that the Government has properly, and very conservatively, calculated at $463,221. See United States v. Blackman, 746 F.3d 137, 143-44 (4th Cir. 2014) (discussing that fact "that defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order" since forfeiture is calculated based on total proceeds of crime, not percentage remaining in defendant's possession).[2]

---

[2] Since the Government has proposed an extraordinarily conservative Money Judgment calculation solely based on the "Personal Benefit" category as set forth in the schedules, final forfeiture of the Properties herein, which are categorized and accounted for in other schedules by

**C.    The record supports a finding of a nexus between the specific business entity, funds, and vehicles, and the crimes of conviction.**

The record also establishes the nexus between the Properties and the offenses of conviction. Specifically, the record establishes as follows:

- **Niyato Industries**: Defendant and others clearly (1) fraudulently misrepresented that Niyato was a legitimate business (Trial Exhibit 69, Motion Exhibit 2), (2) funded Niyato with fraud proceeds, (3) used Niyato as the primary mechanism to promote the fraud, and (4) used Niyato and its accounts to engage in money laundering. Thus, the preponderance of the evidence establishes that Niyato constitutes fraud proceeds, property used or intended to be used to facilitate or promote the fraud, and property involved in money laundering;

- **Approximately $304,881.82 seized from J.P. Morgan Chase Account XXXXX9352, such account held in the name of Niyato Industries, Inc. and with a signature card in the name Robert L. Stencil** (Trial Exhibit 67, schedule 3, Motion Exhibit 1): On or about July 8, 2016, based on a Seizure Warrant and Affidavit (WDNC Case No. 3:16mj257), law enforcement seized these funds from an account that the trial record established received fraud proceeds and was used to pay conspirators and otherwise promote the fraud. Thus, the preponderance of the evidence establishes that these funds constitute fraud proceeds and property used or intended to be used to facilitate or promote the fraud;

- **Approximately $214.76 seized from J.P. Morgan Chase Account XXXXX6166, such account held in the name of Niyato Industries, Inc. and with the signature card in the name of Robert L. Stencil** (Trial Exhibit 67, schedule 2, Motion Exhibit 1): On or about July 8, 2016, based on a Seizure Warrant and Affidavit (WDNC Case No. 3:16mj257), law enforcement seized these funds from an account that the trial record established received fraud proceeds. Thus, the preponderance of the evidence establishes that these funds constitute fraud proceeds;

- **Approximately $100,000 seized from an account controlled by attorney Randy M. Fletcher of the Law Firm Manning Fulton, to which Niyato Industries had forwarded fraud proceeds**: On or about July 28, 2016, based on a Seizure Warrant and Affidavit (WDNC Case No. 3:16mj280), law enforcement seized these funds from a law firm account that, in turn, had received funds from one or more JP Morgan

---

CPA Green and other trial evidence, should not result in a credit towards the requested Money Judgment.

Chase accounts of Niyato. Thus, the preponderance of the evidence establishes that these funds constitute fraud proceeds.

- **One 2012 Ford LGT conventional F-150, VIN 1FTNF1CFXCKD28495, titled to Niyato Industries, Inc.**: On or about August 25, 2016 pursuant to execution of a Search Warrant (WDNC Case No. 3:16mj327-1), law enforcement seized this vehicle in Charlotte, North Carolina. The vehicle was labeled to promote Niyato and its purported Compressed Natural Gas system and was used in press releases, social media accounts, and YouTube videos. As set forth more fully in Trial Exhibit 67 and in United States Postal Inspector Mark Heath's Affidavit, expenses related to the purchase, promotion and maintenance of the vehicle were paid from a Niyato account and derived from fraud proceeds (Trial Exhibit 67, Schedules 3 and 4, Motion Exhibit 1; and Heath Affidavit, Motion Exhibit 3). Thus, the preponderance of the evidence establishes that this vehicle constitutes and is derived from fraud proceeds and property used or intended to be used to facilitate or promote the fraud.

- **One 2015 Ford F-350, VIN 1FT8W3B63FEB06250, titled to Niyato Industries, Inc.:** On or about August 25, 2016 pursuant to execution of a Search Warrant, (WDNC Case No. 3:16mj327-2), law enforcement seized this vehicle in Charlotte, North Carolina. The vehicle was labeled to promote Niyato and its purported Compressed Natural Gas system and was used in press releases, social media accounts, and YouTube videos. Expenses related to the purchase, promotion and maintenance of the vehicle were paid from a Niyato account and derived from fraud proceeds (Trial Exhibit 67, Schedules 3 and 4, Motion Exhibit 1; and Heath Affidavit, Motion Exhibit 3). Thus, the preponderance of the evidence establishes that this vehicle constitutes and is derived from fraud proceeds and property used or intended to be used to facilitate or promote the fraud.

Based on the foregoing, the Government has established by a preponderance of the evidence that the Properties constitute or are derived from fraud proceeds, and property used or intended to be used to facilitate or promote the fraud, and property involved in money laundering violations. Accordingly, this Court orders the Properties subject to forfeiture.

**WHEREFORE**, based on the aforementioned record whereby the Government has established, by a preponderance of the evidence, both the bases for a money judgment amount and a nexus between the properties and the counts of conviction, the Government's Motion [#384] is

**GRANTED**, the following property is ordered forfeited pursuant to FED. R. CRIM. P. 32.2, and the Government is authorized to take and maintain custody of the specific Property for forfeiture:

- A forfeiture money judgment in the amount of $463,221, such amount consisting fraud proceeds attributable to Defendant;
- Approximately $304,881.82 seized from J.P. Morgan Chase Account XXXXX9352, such account held in the name of Niyato Industries, Inc. and with a signature card in the name of Robert L. Stencil;
- Approximately $214.76 seized from J.P. Morgan Chase Account XXXXX6166, such account held in the name of Niyato Industries, Inc. and with a signature card in the name of Robert L. Stencil;
- Approximately $100,000 seized from an account under the control of attorney Randy M. Fletcher of the Law Firm Manning Fulton, to which Niyato Industries had forwarded fraud proceeds as acknowledged during trial by Fletcher;
- One 2012 Ford LGT conventional F-150, VIN 1FTNF1CFXCKD28495, titled to Niyato Industries, Inc.;
- One 2015 Ford F-350, VIN 1FT8W3B63FEB06250, titled to Niyato Industries, Inc.; and
- Any and all interest in Niyato Industries, Inc.

Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order to the extent that the order pertains to the specific Property; notice of its intent to dispose of the Property in such manner as the Attorney General may direct; and notice that any person, other than the Defendant, having or claiming a legal interest in any of the above-listed Property must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited Property and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person

known to have alleged an interest in Property that is the subject of this Order, as a substitute for published notice as to those persons so notified.

Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture as to the Properties. If no third parties timely file petitions, this Order shall become final by operation of law.

**SO ORDERED.**

Signed: June 7, 2019

Max O. Cogburn Jr
United States District Judge